*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0033**

State of Minnesota,
Respondent,

vs.

Crystal Lynn Senart,
Appellant.

**Filed October 27, 2025**
**Affirmed**
**Bjorkman, Judge**

Isanti County District Court
File No. 30-CR-23-892

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Jeffrey Edblad, Isanti County Attorney, Nicholas J. Colombo, Assistant County Attorney, Cambridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Slieter, Presiding Judge; Bjorkman, Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges her conviction for making threats of violence during a probation-revocation hearing, arguing that the state did not establish the intent element of the offense. Because sufficient evidence supports her conviction, we affirm.

# FACTS

Respondent State of Minnesota charged appellant Crystal Lynn Senart with making threats of violence under Minn. Stat. § 609.713, subd. 1 (2022), for a statement she made during a contested probation-revocation hearing conducted over Zoom. Senart pleaded not guilty, and a two-day bench trial was held.

At trial, the district court considered the transcript of the probation-violation hearing. During that hearing, Senart admitted to several probation violations. The district court then asked the probation agent (the agent) to recommend a consequence for the violations, and the following occurred.

> THE AGENT: Your Honor, this is a 364-day file. I have twenty-six days calculated. I would be okay with ninety and discharge. I'm not sure what the State is recommending.
> THE COURT: Okay. Thank you.
> SENART: Ninety mother f-ck--g days, dude?
> THE COURT: Woah.
> SENART: I'll f-ck--g slit a b-tch's throat.
> DEFENSE COUNSEL: Ms. Senart?
> THE COURT: Woah. Woah.
> DEFENSE COUNSEL: Ms. Senart.
> SENART: I'm sorry.
> THE COURT: Ms. Senart? You're going to serve ninety straight up if you—
> SENART: I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry.
> THE COURT: Okay.
> SENART: That's crazy though.
> THE COURT: Okay.
> SENART: It's been going on for three years.
> DEFENSE COUNSEL: Ms. Senart, let me talk—
> SENART: For three years.
> THE COURT: Hold on. Hold on. You're going to have a chance to say something, but if you lash out like that—
> SENART: I apologize. I apologize.
> THE COURT: —that's contempt of court.

2

SENART: I apologize.  I'm sorry.
THE COURT: This is your warning.
SENART: I'm sorry.

During the trial, the district court also heard testimony from the agent, a defense investigator, the court reporter who was present at the probation-revocation hearing, Senart, and Senart's father.

The agent testified that she understood the statement "I'll f-ck--g slit a b-tch's throat" was directed at her because she recommended a 90-day jail term as a consequence for Senart's violations.  The statement frightened the agent and made her "very uncomfortable," caused her family members concern, and prompted her husband to suggest she quit her job.  In response to Senart's statement, the agent's supervisor "made arrangements to have patrol units potentially circle [the agent's] house to make sure nothing would happen [there]."  Ultimately, the agent was removed from Senart's case.

Senart explained that she made the statement as an expression of frustration and did not intend it to be perceived as a threat.  She also testified that the phrase "slit a b-tch's throat" has a non-threatening connotation in pop culture and that she has previously used it in that way.[1]  But she acknowledged that it was "not okay to say" the phrase, that other people might be shocked by it, and that its use "could cause fear in somebody."  Senart reiterated that it was not her intent to frighten anyone.  And she added that she thought her microphone was muted when she made the statement and that she directed it toward people

---

[1] Senart's father testified that he had never heard Senart say "slit a b-tch's throat."

who were in the room with her, not the district court or any other participant in the remote court proceeding.

The district court found Senart guilty, concluding Senart said, "I'll f-ck--g slit a b-tch's throat" with "reckless disregard of the risk of causing terror." In its order, the district court found that Senart made the statement in response to the agent's recommendation and the agent "credibly testified she felt threatened" by it. The court found Senart's testimony that she believed her microphone was muted and that "slit a b-tch's throat" is a common phrase and part of her "usual vernacular" was not credible.

Senart appeals.

## DECISION

A person is guilty of making threats of violence if they "threaten[], directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. A defendant acts recklessly when they make a "violent threat in conscious disregard of a substantial and unjustifiable risk that [their] words or conduct will cause extreme fear." *State v. Mrozinski*, 971 N.W.2d 233, 240 (Minn. 2022).

Senart argues that the state provided insufficient evidence to prove the intent element of the offense—that she had the purpose to cause terror or acted in reckless disregard of the risk that her statement would cause extreme fear.

Because the intent element of the charged offense was proved by circumstantial evidence, we conduct a two-step sufficiency analysis. *State v. Johnson*, 979 N.W.2d 483, 495 (Minn. App. 2022), *aff'd*, 995 N.W.2d 155 (Minn. 2023). We first identify the

4

circumstances proved, deferring to the fact-finder's acceptance of the proof of these circumstances and rejection of evidence that conflicts with them. *State v. Hokanson*, 821 N.W.2d 340, 354 (Minn. 2012). Then we independently examine "the reasonableness of all inferences that might be drawn from the circumstances proved" without deferring to the fact-finder's choice between inferences. *State v. Al-Naseer*, 788 N.W.2d 469, 473-74 (Minn. 2010) (quotation omitted). To support a conviction, "the circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Andersen*, 784 N.W.2d 320, 330 (Minn. 2010).

Viewing the record in the light most favorable to the guilty verdict, the state proved these circumstances: (1) Senart was participating in a remote court proceeding in which she admitted several probation violations; (2) the agent recommended that Senart serve 90 days in jail as a consequence for the violations; (3) immediately after the agent made this recommendation, Senart exclaimed, "Ninety mother f-ck--g days, dude?" and "I'll f-ck--g slit a b-tch's throat"; (4) the agent believed that Senart said, "I'll f-ck--g slit *that* b-tch's throat," and directed the statement at her; (5) the statement frightened the agent and made her and her family feel "very uncomfortable," and prompted increased security at the agent's home; (6) Senart acknowledged that the phrase "I'll f-ck--g slit a b-tch's throat" was inappropriate and "could cause fear in somebody"; and (7) after apologizing several times, Senart stated that the agent's recommendation was "crazy" and that her case had "been going on for three years." We easily conclude that these circumstances proved are consistent with a rational inference that Senart made the statement recklessly—with

5

conscious disregard of the substantial and unjustifiable risk that her words would cause the agent terror.

Senart urges us to conclude that the circumstances proved are also consistent with a reasonable inference other than guilt—that she made the statement as a spontaneous expression of transitory anger. It is true that the threats-of-violence statute is not intended to "authorize grave sanctions against the kind of verbal threat which expresses transitory anger." *State v. Jones*, 451 N.W.2d 55, 63 (Minn. App. 1990) (emphasis omitted) (quotation omitted), *rev. denied* (Minn. Feb. 21, 1990); *see also State v. Marchand*, 410 N.W.2d 912, 915 (Minn. App. 1987) (stating that to reverse a conviction we "must find that the evidence indicates [the defendant] acted not out of an intent to terrorize but rather in the midst of transitory anger"), *rev. denied* (Minn. Oct. 21, 1987). But we are not persuaded that the inference Senart would have us draw is reasonable.

At the time Senart responded to the agent's jail recommendation by saying, "I'll f-ck--g slit a b-tch's throat," she knew the statement "could cause fear in somebody." And it did. The district court expressly found the agent's testimony that she felt threatened credible. Such a reaction is "circumstantial evidence relevant to the element of intent of the defendant in making the threat." *State v. Schweppe*, 237 N.W.2d 609, 614 (Minn. 1975).

More importantly, the evidence Senart relies on to support an inference of innocence is not part of the circumstances proved. Senart advanced the transitory-anger argument at trial, including testifying that she made the statement as an expression of frustration. The district court rejected the argument. And it expressly found incredible her testimony that

6

"slit a b-tch's throat" is a common phrase with non-violent connotations. We defer to the fact-finder's credibility determinations. *Hokanson*, 821 N.W.2d at 354.

On this record, the only reasonable inference that can be drawn from the circumstances proved is that Senart made the statement, "I'll f-ck--g slit a b-tch's throat," with reckless disregard for the substantial risk that it would cause terror. Accordingly, her claim of insufficient evidence fails.

**Affirmed.**